UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jason Thomas Boston, | ) | C/A No. 5:15-cv-01009-MGL-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Nadia Pressley, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Jason Thomas Boston ("Plaintiff"), proceeding pro se, brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. This matter is before the court on Defendant Nadia Pressley's Motion for Summary Judgment filed on October 14, 2015. ECF No. 42. As Plaintiff is proceeding pro se, the court entered a *Roseboro* Order[1] on October 15, 2015, advising Plaintiff of the importance of such motions and of the need for him to file adequate responses. ECF No. 43. Plaintiff responded to the Motion for Summary Judgment on October 22, 2015 and filed a Supplemental Response on February 12, 2016. ECF Nos. 48, 55. Defendant's Motion is now ripe for consideration. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because this motion is dispositive, a Report and Recommendation is entered for the court's review.

I.    Factual and Procedural Background

Plaintiff was a pretrial detainee housed at the Williamsburg County Detention Center ("WCDC") during the time period relevant to his Complaint. ECF No. 1 at 2. Plaintiff is

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

currently incarcerated within the South Carolina Department of Corrections ("SCDC") at Evans Correctional Institution. *Id.* Plaintiff filed his Complaint on February 26, 2015, ECF No. 1-1; *see Houston v. Lack*, 487 U.S. 266, 271 (1988) (pro se prisoner's pleading is deemed "filed" at moment of delivery to prison authorities for forwarding to district court), alleging that the conditions of his confinement at WCDC were making him sick due to mold, absent hygienic supplies, and cold food. In his initial pleading to the court Plaintiff alleges that

> [T]hey have me house in an room full with dirt mole to now some night my lungs and days feel like they have weights on it nose will state having blood coming out of it and many time they don't bathroom paper for the inmate's to use we having to go 3 and 4 day without bathroom paper. The food are always cold never hot and some time mole on the bread.

ECF No. 1 at 1.[2] On a more detailed complaint form submitted in response to the court's initial order ("proper-form complaint"), Plaintiff alleges that he was "being house[d] in unsafe unclean unit." ECF No. 1-2 at 2. He responds "yes," to a question on the form asking if he filed a grievance concerning the claims he was making and stated that he filed the grievance in "March an Jan." *Id*. Plaintiff did not provide a grievance number and alleges that he did not receive a final institutional answer to his grievance because, according to Plaintiff, he received "no responds" from Defendant Pressley. *Id*.

In the proper-form complaint, Plaintiff alleges that he was forced "to live in dirt." He alleges that rust "come's [sic] out the air vent with the smell of mold . . . ." *Id*. at 3. Plaintiff also alleges that when the conditions are reported, WCDC officials "try to get somebody to paint over it then remove it." *Id*. Plaintiff alleges that he had trouble breathing at night and that his lungs felt like he has weights on them. Plaintiff also alleges that he and other detainees were forced to put their hands in a water cooler in order to get cold water and that sometimes he goes without

---

[2] Under the liberal construction of pro se pleadings rule, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the undersigned construes Plaintiff's references to "mole" as being intended to reference "mold."

eating because the food he gets is something he "can't eat . . . ." *Id*. Plaintiff also alleges that the showers at WCDC were "unclean," that food was handed out by fellow inmates "with the same glove they use around the pod to do thing with," and that he was forced to use the same paper plate and paper cup since he was admitted to WCDC. *Id*. Plaintiff repeats his original allegations about lack of toilet paper and about getting a "nose bleed from time to time from inhaling all that rust dirt." *Id*. at 4. He alleges that he had not seen anybody about his nose bleeds, but said that the water smelled "like sewer water" and that rats ran "under the door in room's." *Id*. Plaintiff further alleged that the "carts they push the food in are very clean [sic] and leave some kind of mark on the food like the trays they put the paper plate on." *Id*.

Plaintiff seeks $3.5 million to pay him for his "pain and the way they force me to live." *Id*. at 5. Plaintiff also asks for "somebody to check the jail out come an [sic] check the mold and rust in c-pod and air vent . . . ." *Id*.

II.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

3

materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a Complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g.*, *Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

III.     Analysis

A.  Defendant Pressley's Motion for Summary Judgment

Defendant contends that she is entitled to summary judgment on Plaintiff's claims because Plaintiff's pleadings contain no allegations of personal wrongdoing by her and because Plaintiff does not allege which, if any, of the complained of conditions of confinement she was responsible for or how she violated his constitutional rights. ECF No. 42-1 at 4. Defendant also contends that even if there are sufficient allegations to find her personally responsible for the conditions of which Plaintiff complains, she is entitled to qualified immunity from Plaintiff's monetary claims. *Id.* Finally, Defendant asserts that Plaintiff's Complaint should be dismissed because he failed to exhaust his administrative remedies. Defendant attaches three affidavits to

her Motion. One affidavit, from Captain Jacquelyn Scott, states that she is "involved in the day to day operations of WCDC" and that she reviewed Plaintiff's WCDC files and was "unaware of the existence" of any grievance from Plaintiff that raised complaints about the conditions of confinement that are raised in this case. She also avers that she was "unaware" of Plaintiff telling other staff members about the problems he allegedly experienced. ECF No. 42-2. Another affidavit, from Major Curtis Brown, states that he is in charge of maintenance at WCDC and that he was "unaware" of the environmental and food-service conditions that Plaintiff alleges although he was aware of some instances where detainees complained of needing toilet tissue and about the "trustees who serve water from the water cooler." He said those complaints were handled "promptly." He also avers that Plaintiff had access to water in his cell and not only to water in a water cooler of which he complains and that he was "not aware of Plaintiff suffering any injuries resulting from any of the issues complained of in his Complaint." ECF No. 42-3 at 2. The final affidavit is from Heather Shelton, LPN, who avers that Plaintiff's medical records do not show any complaints of nosebleeds or of lung problems while he was detained at WCDC. In fact, according to Shelton, Plaintiff did not have any sick calls during the period of his detention. ECF No. 42-4 at 1-2.

Plaintiff responds in an un-notarized submission that he was told by "Williamsburg Cpt. Scott . . . that [Defendant] was around daily and which me and other inmate at the time never seen her." ECF No. 48 at 1. Plaintiff also responds that the affidavits of Cpt. Scott and Major Brown submitted in support of the Motion for Summary Judgment "is exact the same like being wrote by the same person." *Id*. Plaintiff further responds that just because someone pulled his medical history did not mean that he did not suffer from nosebleeds. He asserts that everything he put in his "claim" was true and that the officers' affidavits do not say he is untruthful, just that

5

they were unaware of the problems that Plaintiff complains about. Plaintiff questions how they could run the jail daily and not be aware of the problems. *Id*. Plaintiff contends that the WCDC grievance system is not properly run because the inmates are required to submit grievances "on the desk in to the unit," but that he was never given a copy of his grievance so he cannot present it to the court. Plaintiff contends that the WCDC grievance system allows them to have a "good defense in any case on there [sic] behalf" because they do not return "some inmates['] grievance." *Id*. at 2. In his supplemental Response, which is notarized, Plaintiff avers that he did file grievances about the conditions of his confinement at WCDC, that those grievances "went out with the staff of the Defendant Nidia [sic] Pressley," that he never received an answer to any grievances except one involving personal property, and he did not receive a copy of the grievances. Plaintiff states that he told LPN Shelton in the medical department about the problems he was having and she said she would check into it, but that she would have to "pull [his] medical records first." Plaintiff asserts that if Major Curtis Brown did not know about the conditions at WCDC as he states in his affidavit, it was because he did not respond to grievances or "show up to the unit" to see them for himself. ECF No. 55 at 2. At the conclusion of his Supplemental Response, Plaintiff repeats his factual statements concerning the conditions he allegedly experienced at WCDC and points out that Defendants' affiants do not say that his statements were untrue, only that they (the affiants) were unaware of the alleged conditions. *Id*. at 3.

B. Failure to State a Claim Against Defendant Pressley

As previously noted, Defendant Pressley, the Administrator of WCDC, initially contends that this case should be dismissed because Plaintiff fails to state a plausible claim for relief against her. ECF No. 42-1 at 4. Plaintiff's only reply to this contention in his Response and

6

Supplemental Response is his un-notarized statement that he was told by "Williamsburg Cpt. Scott . . . that [Defendant Pressley] was around daily and which me and other inmate at the time never seen her." ECF No. 48 at 1. Plaintiff's allegations in his Complaint include no reference at all to Defendant Pressley except for her name in the caption of the proper-form Complaint and on page 2 as an alleged grievance recipient. ECF No. 1-1 at 1-2. Plaintiff does not state in either the body of his Complaint or in his Response or Supplemental Response to the Motion for Summary Judgment that Defendant was affirmatively informed, other than through a possible grievance,[3] about the conditions of his confinement, but failed to correct them. Plaintiff also does not state that Defendant enforced an unconstitutional policy or custom in her official role as Administrator of the WCDC.

Under the provisions of the Prison Litigation Reform Act, more specifically 28 U.S.C. § 1915(e)(2)(B), this court should dismiss an action filed by a prisoner which is "frivolous" or "fails to state a claim on which relief may be granted." Under that statute, such dismissal may be granted "at any time." *Id*. While the undersigned notes that though Plaintiff is appearing pro se, Plaintiff is required to independently articulate causes of action, and "[courts] are not also required to construct the party's legal arguments for him." *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985); *see also Cobin v. Hearst-Argyle Television, Inc.*, 561 F. Supp. 2d 546, 549 (D.S.C. 2008). It is settled that where there are no

---

[3] Receipt of or response to a grievance is not sufficient personal involvement in the grieved circumstances to impose § 1983 liability on a supervisory official. *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *see Green v. Beck*, 539 F. App'x 78, 80 (4th Cir. 2013); *Miles v. Aramark Corr. Serv.*, 236 F. App'x 746, 751 (3d Cir. 2007); *Rogers v. United States*, 696 F. Supp.2d 472, 488 (W.D. Pa. 2010).

allegations and no proof of any personal involvement or wrongdoing by a defendant, a plaintiff fails to state a claim on which relief can be granted as to that defendant. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed."); *Newkirk v. Circuit Court of City of Hampton*, No. 3:14CV372-HEH, 2014 WL 4072212 (E.D. Va. Aug. 14, 2014) (complaint subject to dismissal where no factual allegations against named defendants within the body of the pleading); *see also Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Black v. Lane*, 22 F.3d 1395, 1401 n.8 (7th Cir. 1994); *Walker v. Hodge*, 4 F.3d 991, at * 2 n. 2 (5th Cir. 1993); *Banks v. Scott*, 3:13CV363, 2014 WL 5430987, at *2 (E.D. Va. Oct. 24, 2014). In absence of substantive allegations of wrongdoing against a named defendant, there is nothing from which a court can liberally construe any type of plausible cause of action against that defendant. *See Cochran v. Morris*, 73 F.3d 1310 (4th Cir. 1996) (statute allowing dismissal of *in forma pauperis* claims encompasses complaints that are either legally or factually baseless); *Weller v. Dep't of Social Servs.*, 901 F.2d at 389 n.2 (dismissal proper where there were no allegations to support claim).

Furthermore, the fact that a defendant holds a supervisory position over persons who might have committed wrongs does not substitute for the lack of substantive allegations of wrongdoing by that supervisor nor is his supervisory position sufficient to hold him liable for the alleged wrongdoing of his subordinates. To assert a plausible constitutional-violation claim against any particular public official under 42 U.S.C. § 1983,[4] a plaintiff's allegations must show

---

[4] Plaintiff's claims for damages and other relief allegedly arising from the conditions of his confinement within a local detention center in South Carolina are properly considered by this court under its federal question jurisdiction pursuant to 42 U.S.C. § 1983. Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731-32 (1989). The purpose of § 1983 is to deter state

8

a causal connection or affirmative link between the conduct of which the plaintiff complains and the official sued. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (a § 1983 plaintiff must show that he suffered a specific injury as a result of specific conduct of a defendant, and an affirmative link between the injury and that conduct); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As a general rule, the doctrine of vicarious liability or *respondeat superior* is not available to a § 1983 plaintiff as a means to create liability of a state-actor supervisor for the acts or his/her subordinate. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). There is a limited exception to the prohibition against imposing *respondeat superior* or vicarious liability on supervisory personnel in § 1983 cases, which has been enunciated in cases such as *Slakan v. Porter*, 737 F.2d 368, 370-75 (4th Cir. 1984). Supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates so long as the facts alleged satisfy the Fourth Circuit Court of Appeals' established three-part test for supervisory liability under § 1983: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative

---

actors from using badge of their authority to deprive individuals of their *federally guaranteed* rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citation omitted) (emphasis added). No other viable basis for the exercise of this court's subject matter jurisdiction over Plaintiff's allegations is evident from the face of the Complaint.

causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). In *Randall v. Prince George's County*, 302 F.3d 188, 206 (4th Cir. 2002), the Fourth Circuit concluded that, "[u]nder the first prong of *Shaw*, the conduct engaged in by the supervisor's subordinates must be 'pervasive,' meaning that the 'conduct is widespread, or at least has been used on several different occasions.'" Furthermore, in establishing "deliberate indifference" under *Shaw's* second prong, a plaintiff "[o]rdinarily . . . cannot satisfy his burden of proof by pointing to a single incident or isolated incidents . . . for a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.* (quoting *Slakan*, 737 F.2d at 373); *see also Green v. Beck*, No.12-7279, 2013 WL 4517028, *2 (4th Cir. Aug. 27, 2013) (alleged failure of supervisory officials to investigate grievances not sufficient to establish liability under § 1983).

Having reviewed the parties' pleadings and their submissions on the pending Motion for Summary Judgment, the undersigned finds that Defendant's contention is well taken and that this case should be dismissed for failure to state a claim on which relief may be granted. The *Slaken* exception is not adequately pleaded in this case because, as previously noted, there are no allegations that Defendant Pressley had any personal knowledge (or even subjective knowledge) of the conditions of confinement or resulting health problems that Plaintiff alleges he experienced when he was detained at WCDC. Moreover, in response to Defendant's Motion for Summary Judgment, Plaintiff did not provide this court with any additional substantive allegations or evidence that show that Defendant was personally involved in the creation of, maintenance of, or failure to correct the alleged conditions of Plaintiff's confinement at WCDC. Thus, regardless of how pervasive the environmental and hygienic problems at WCDC might

have been, Defendant Pressley cannot be found liable for them simply based on her job as the overall supervisor at the detention center or based on Plaintiff's bald statement that he was told by some other correctional officer that Defendant Pressley came to the detention center at some undisclosed time even though Plaintiff never saw her there.

Because Plaintiff does not name any Defendants other than Defendant Pressley the lack of substantive allegations or proof of Pressley's personal involvement in the conditions of confinement of which he complains is fatal to this case. As a result, the other issues raised in the Motion for Summary Judgment, *i.e.*, whether Plaintiff properly exhausted his administrative remedies or whether Defendant Pressley would be entitled to qualified immunity, are irrelevant and will not be discussed in this Report.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendant Pressley's Motion for Summary Judgment, ECF No. 42, be GRANTED.

IT IS SO RECOMMENDED.

March 31, 2016                                                          Kaymani D. West
Florence, South Carolina                                          United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

11

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).